| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL GAMCO, INC., | Civil No: 04-CV-1053-B(AJB) |
| Plaintiff, ) | |
| v. ) | ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SUPPLEMENTAL AND SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION |
| MULTIMEDIA GAMES, INC., ) | |
| Defendant. ) | |
| _____ ) | |
| MULTIMEDIA GAMES, INC., ) | |
| ) | |
| Counterclaimant, ) | |
| v. | |
| INTERNATIONAL GAMCO, INC.; OASIS TECHNOLOGIES, INC.; SCOTT HENNEMAN; JOHN ADAMS, | |
| CounterDefendants. | |
| _____ | |

Defendant Multimedia Games, Inc. ("Multimedia") brought the instant motion to dismiss the Supplemental and Second Amended Complaint of Plaintiff International Gamco, Inc. ("Gamco"). This matter was heard on November 27, 2006 at 9:00 a.m. For the reasons discussed more fully below the Court hereby **DENIES** the motion.

## I.      FACTUAL BACKGROUND

The instant litigation concerns claims of patent infringement of U.S. Patent No. 5,324,035 ("the '035 patent"). The '035 patent was initially issued in June 1994 and assigned to Oasis Technologies Inc. ("Oasis"), then known as Infinational Technologies.

On March 15, 2001, as the result of a settlement agreement between Oasis and Sierra Design Group ("Sierra") in case no. CV N 99-00295 ECR (RAM) in the U.S. District Court of Nevada ("Settlement Agreement"), Oasis granted to Sierra a non-exclusive license to practice the '035 patent. (Dec. Michelle A. Herrerra Supp. Def.'s M. Dismiss Ex. J.) The terms of the settlement gave Sierra a non-exclusive, perpetual, non-terminable worldwide license. The Settlement Agreement explicitly stated that Sierra "shall not have the right to grant sub-licenses" to the '035 patent (Id. § 2a.) It further provided that the rights were assignable and that any successors or assigns of the parties would be bound by its terms. (Id. § 16.)

On December 3, 2001, Oasis assigned its entire right, title and interest in the '035 patent to Gamco. (Dec. Scott Henneman filed Aug 19, 2005 ¶ 9, Ex. J [hereinafter "Dec. Henneman Aug. 2005"].) At this moment in time Gamco became the licensor under the non-exclusive license with Sierra.

In February 2003, Gamco executed an Asset Purchase Agreement under which it assigned the '035 patent to International Game Technology ("IGT"). The Asset Purchase Agreement provided that Gamco retained certain rights under the '035 patent, including

some purportedly exclusive rights in New York state.[1] (Dec. Henneman Aug. 2005 Ex. K.) The Asset Purchase Agreement explicitly refered to the Settlement Agreement and the non-exclusive license grant to Sierra in Section 1.3: "'Existing License' means the non-exclusive license granted between Seller [Gamco][2] to the Transferred Patents under that certain Settlement Agreement by and between Seller [Gamco] and Sierra Design Group dated March 15, 2001, which license and any proceeds therefrom shall be retained by Seller [Gamco]." (Id.)

In May 2004, Gamco initiated this patent infringement action against Multimedia alleging that Multimedia's activities in New York state infringed the claims of the '035 patent. After dismissal of Gamco's initial complaint for lack of standing, Gamco and Oasis executed a modification of the 2001 Asset Purchase Agreement on November 10, 2005 ("Modification Agreement") (Dec. Callie A. Bjurstrom Supp. Def.'s M. Dismiss ¶ 7, Ex. D [hereinafter "Dec. Bjurstrom]".); Gamco then filed its Supplemental and Second Amended Complaint. The Modification Agreement modified and replaced particular sections of the Asset Purchase Agreement but otherwise left the provisions of the Asset Purchase Agreement in place. (Dec. Bjurstrom Ex. D.) In particular section 5.3(b) was replaced by section 8 of the Modification Agreement; this new section granted to Gamco exclusive rights in the territory of the New York State Lottery with rights to sublicense and granted to Gamco the exclusive right to sue for past, present and future acts of infringement in that territory. (Id.) The only restriction placed on these exclusive rights was IGT's right to approve sub-licensees. (Id.)

In April 2006, Multimedia brought a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction arguing that Gamco still did not have

---

[1] This arrangement was characterized as an exclusive licensing agreement by IGT to Gamco. However, the Court later determined that these rights were insufficient to confer standing. (Order October 14, 5005, Docket no. 42.) Gamco's Complaint was dismissed without prejudice and Gamco later filed its Supplemental and Amended Second Complaint.

[2] The Asset Purchase Agreement refers to Gamco as "Seller" and IGT as "Buyer."

1  sufficient rights to confer standing. After hearing this motion and considering a motion for
2  reconsideration, the Court determined that Gamco had sufficient rights within the specific
3  "enterprise" of the New York State Lottery to provide it with standing to sue. (Order Aug.
4  31, 2006.) The Court also certified this issue for interlocutory appeal and the issue is
5  presently pending before the U.S. Court of Appeals for the Federal Circuit.[3] (Id.)

6  Multimedia filed the instant motion in October 2006. Multimedia argues that
7  Gamco cannot be an exclusive licensee in the "enterprise" of the New York State Lottery
8  because a third party, Sierra, holds a non-exclusive license. The matter was fully briefed
9  and heard by the Court on November 27, 2006, at 9:00 a.m.

10 **II.     DISCUSSION**
11      **A.     LEGAL STANDARD**
12  Under Rule 12(b)(1), a defendant may seek to dismiss a complaint for "lack of
13  jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Plaintiff, as the party
14  seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. See
15  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379 (1994).

16  Where a jurisdictional challenge is separate from the merits of the case, the court "is
17  free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving
18  factual disputes where necessary." Augustine v. United States, 704 F.2d 1074, 1077 (9th
19  Cir. 1983); Thornhill Publishing Co. v. General Telephone & Electronic Corp., 594 F.2d
20  730, 733 (9th Cir. 1979). "No presumptive truthfulness attaches to plaintiff's allegations,
21  and the existence of disputed facts will not preclude the trial court from evaluating for itself
22  the merits of jurisdictional claims." Thornhill, 594 F.2d at 733 (9th Cir. 1979)).

23      **B.     ANALYSIS**
24  At issue here is whether Gamco has sufficient rights in the '035 patent in the
25  "enterprise" of the New York State Lottery to confer standing to sue. Multimedia sets forth

---

27  [3] Pursuant to an Order to Stay on October 5, 2006 and another Order to Stay on November 21, 2006, all proceedings in the case are stayed with the exception of the instant issue.

two grounds for its motion. First, it argues that Oasis's earlier grant of a non-exclusive worldwide license to Sierra precludes Gamco from asserting any exclusive rights because Gamco is not the only party with rights to practice the '035 patent in the New York State Lottery. Second, Multimedia argues that the Modification Agreement executed by Oasis and IGT is a sham because it cannot confer upon Gamco rights which IGT did not have.

### 1. Applicable Law: Exclusive Licensee's and Standing

To have standing to sue for patent infringement, a party must be the patentee or a successor in title to the patentee. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1551 (Fed. Cir. 1995). "Where a patentee makes an assignment of all significant rights under the patent, such assignee may be deemed the effective 'patentee' under the statute and has standing to bring a suit in its own name for infringement." Ortho Pharmaceutical Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1030 (Fed. Cir.1995).

"If the patent owner grants only a license [rather than an assignment], the title remains in the owner of the patent; and suit must be brought in his name . . . . Any rights of the licensee must be enforced through or in the name of the owner of the patent, and perhaps, if necessary to protect the rights of all parties, joining the licensee with him as a plaintiff." Abbott Laboratories v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir.1995). "[A] bare licensee, who has no right to exclude others from making, using, or selling the licensed products, has no legally recognized interest that entitles it to bring or join an infringement action." Id.; Ortho Pharmaceutical Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1031 (Fed. Cir. 1995) ("A holder of such a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee.").

Where a licensee receives an exclusive right to practice the invention in a particular territory, if it is deemed that such transfer of rights conveys "all substantial rights" within that territory, the exclusive licensee is treated as the effective patentee; the exclusive licensee thus has standing to sue on its own for patent infringement. Sicom Systems, Ltd. v.

1  Agilent Technologies, Inc., 427 F.3d 971, 976 (Fed. Cir. 2005).  Courts examine the intent
2  of the parties and the substance of the licensing agreement utilizing a number of factors to
3  ascertain if "all substantial rights" have been obtained by an exclusive licensee: (1) the
4  exclusive right of the licensee to sue for infringement independent of the licensor, id. at
5  977; (2) the right of the licensee to exclude others from making, using and selling the
6  patented invention, id.; (3) a promise that the licensor will refrain from granting any other
7  party rights in the licensee's area of exclusivity, id. at 978; (4) a lack of reservation to the
8  licensor to initiate on its own or participate in infringement suits, id.; (5) a licensee's right
9  to sub-license,  Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1380 (Fed. Cir. 2000).

**2.     The Effect of Sierra's Non-Exclusive License on Gamco's Rights**

Since the rights to the '035 patent transferred several times to a number of parties, it is helpful to trace the rights through the various agreements that were executed after the issuance of the '035 patent to determine which of the parties holds "all substantial rights" to the '035 patent.

**a.     Tracing the rights to the '035 patent**

At the outset, Oasis, as the patentee, held full rights to the '035 patent.  In March 2001, as a result of the Settlement Agreement between Oasis and Sierra, Sierra received a non-exclusive worldwide license to practice the '035 patent, with no rights to sub-license.  All other rights remained with Oasis.  Sierra was only a "bare licensee"; it was not a necessary party for any infringement action, nor could it join such an action.  See Ortho, 52 F.3d at 1031.  Therefore, at this point in time, Oasis would have been the only party that could pursue an action for infringement.

When Oasis assigned all of its right, title and interest in the '035 patent to Gamco in December 2001, Gamco then became the party with rights to the '035 patent and the party with standing to sue.  The non-exclusive license granted to Sierra now was assigned to Gamco.  Sierra's non-exclusive license would not at this point have had any effect on Gamco's right to sue for infringement or on Gamco's standing.

In February 2003, the Asset Purchase Agreement between Gamco and IGT divided the rights to the '035 patent between Oasis and IGT. Gamco conveyed and granted all right, title and interest to the '035 patent subject to the terms and conditions specified within the Asset Purchase Agreement. One of these conditions was a non-exclusive license to Gamco for particular territories.[4] IGT still held rights to sublicense the '035 patent; it also held the rights to sue for infringement. Hence, as of February 2003, Gamco did not have sufficient rights to sue for infringement; Gamco and Sierra were non-exclusive licensees of the '035 patent and IGT held the bulk of the rights.[5]

In November 2005, the Modification Agreement perfected Gamco's exclusive rights to the '035 patent for the "enterprise" of the New York State Lottery. An exclusive territorial license with exclusive power to enforce therein is considered equivalent to an assignment and thus confers standing in the territory of the license. Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000). This Court equated an exclusive enterprise license with exclusive power to enforce to an exclusive territorial license within the New York State Lottery and to confer standing in a similar manner. (Order Aug. 31, 2006.) Thus, this Court held that Gamco was an "exclusive enterprise licensee" with standing to sue. The non-exclusive license to Sierra was not raised or considered by the parties at that time.

### b. Were "all substantial rights" transferred to Gamco within its exclusive enterprise?

For Gamco to have standing, it must have received "all substantial rights" to the '035 patent within its exclusive enterprise. Examining first the factors that indicate a transfer of "all substantial rights," see Sicom, 427 F.3d at 976-78; Prima Tek II, 222 F.3d

---

[4] See §§ 1.3, 2.1 of the Asset Purchase Agreement. (Dec. Henneman Aug. 2005).

[5] It should be noted that the Asset Purchase Agreement gave some rights to Gamco to sue for acts of infringement in the New York State Lottery but these were not sufficient for Gamco to have standing as a sole litigant. This is consistent with the Court's Order in October 2005, dismissing Gamco's initial complaint.

at 1380, the majority of these point in favor of Gamco's standing.  First, as of the November 2005 Modification Agreement Gamco holds the exclusive right to sue for infringement of the '035 patent within its exclusive "enterprise."  Second, IGT granted to Gamco the rights to the '035 patent in the New York State Lottery without reserving any rights to make, use or sell the invention for itself.  The only right IGT retained was a right of approval for any sub-licenses that Gamco might make.  Such reservation is a "minor derogation" and does not defeat a grant of "all substantial rights."  <u>Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.</u>, 944 F.2d 870, 875 (Fed. Cir. 1991).  Third, IGT did not reserve any rights to initiate or participate in any infringement suit for acts occurring within Gamco's "enterprise."  Fourth, Gamco holds the sole rights to sub-license the '035 patent in its "enterprise."  Thus, the only sticking point remaining is whether Sierra's non-exclusive rights to practice the '035 patent somehow nullify Gamco's standing as an exclusive licensee because it cannot exclude Sierra from making, using and selling the invention in the New York State Lottery.

Where a patentee has granted a second party an "exclusive license" subject to a prior existing non-exclusive license with a first party, the second party still has standing to sue. It may be, however, that another party must be joined.  See <u>Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.</u>, 117 F. Supp. 2d 508, 512 (E.D. Va. 2000); <u>Prima Tek II</u>, 222 F.3d at 1382 (licensee did not have standing to sue in its own name without patentee).  Generally, the other party to be joined is the "licensor," the one who conferred the prior non-exclusive rights to the first party and thus still retains some rights.  See e.g., <u>Abbott Laboratories v. Diamedix Corp.</u>,  47 F.3d 1128, 1132 (Fed. Cir. 1995) (patentee-licensor Diamedix retained limited rights to make, use and sell the invention and thus its joinder was required); <u>Textile Productions, Inc. v. Mead Corp.</u>,  134 F.3d 1481, 1485 (Fed. Cir. 1998) (licensor Mead retained rights to sub-license to third parties and thus licensee on its own did not have standing).

The facts here depart from this recognized pattern because Gamco itself is the

1  licensor of Sierra's non-exclusive license, not IGT.  This relationship was established in
2  December 2001,when Oasis assigned its entire right, title and interest in the '035 patent to
3  Gamco[6].  Hence, as of December 2001, Gamco became the licensor to Sierra, the licensee.
4  The Asset Purchase Agreement between Gamco and IGT maintained this licensor
5  relationship based on the "existing license" clause in section 1.3 specifying that the license
6  granted to Sierra through the March 15, 2001 Settlement Agreement would be retained by
7  Gamco.  The Modification Agreement also did not alter this relationship.[7]  Thus, beginning
8  in December 2001 and continuing through the November 2005 Modification Agreement,
9  Gamco remained the licensor of the '035 patent to licensee Sierra.

10  Multimedia contends however that Gamco cannot be the licensor of Sierra's rights.
11  It argues that Gamco cannot sublicense to Sierra for broader rights than it holds itself and
12  also that a license agreement cannot be "left behind" with Gamco and detached from the
13  patent rights transferred to IGT.

14  First, Multimedia's contention, citing Prima Tek II, 222 F.3d at 1382, that "an
15  owner or licensee cannot convey that which it does not possess" is inapt here.  At the time
16  when Oasis granted Sierra the non-exclusive license, Oasis owned all substantial rights to
17  the patent.  Similarly, when Oasis transferred the rights to the '035 patent and the role of
18  licensor for Sierra's license to Gamco in December 2001, Oasis possessed these rights and
19  thus could convey them to Gamco.  Therefore, no party *conveyed* what it did not possess.

20  Second, Multimedia has not cited and the Court has not found any legal authority,
21  for why the transfer of these rights by contract should be invalid.  With regard to Sierra's
22  non-exclusive license, the Settlement Agreement that created this license states that the

---

[6] The assignment of Sierra's license to Gamco was consistent with the terms of the Settlement Agreement; the Settlement Agreement permitted assignments and obligated any successors or assigns of the parties to its terms. Thus, Oasis was free to assign its role as licensor to Gamco.

[7] The Modification Agreement explicitly states that unless modified, all provisions of the Asset Purchase Agreement remain in place.  Thus, the licensor-licensee relationship between Gamco and Sierra remained the same.

rights therein could be assigned. Hence, nothing in the Settlement Agreement prevented Oasis from transferring these rights to Gamco, nor prevented Gamco from retaining these rights when other patent rights were transferred to IGT. Furthermore, as between IGT and Gamco, these parties contractually agreed in the Asset Purchase Agreement that the Sierra license and role of licensor would be retained by Gamco. Thus, absent some overarching legal principal, these contractual provisions distributing the rights to '035 patent between the parties should be valid. Therefore, given the conclusion that Gamco remained the licensor of Sierra's rights, any rights to the '035 patent in the "enterprise" of the New York State Lottery were held directly or indirectly by Gamco, again indicative of Gamco's holding "all substantial rights."

Finally, "[i]n determining whether a grant of all substantial rights was intended, it is helpful to look at what rights have been retained by the grantor, not only what was granted." Vaupel, 944 F.870 at 875. Here, IGT retained no rights in the "enterprise" of the New York State Lottery. IGT does not have the right to sue for infringement nor any rights to practice the '035 patent in the "enterprise." Furthermore, IGT never held any rights with respect to Sierra's license and Sierra's right to practice the '035 patent in the "enterprise" of the New York State Lottery. Hence, IGT does not hold any rights that would contradict the conclusion that Gamco holds "all substantial rights" in its "exclusive enterprise" of the New York State Lottery.[8] Therefore, for all the reasons above, the Court

---

[8] Moreover, even if it could be argued the Gamco lacks "all substantial rights," an exclusive licensee may still have standing on its own "when necessary to prevent an absolute failure of justice" Textile Productions, 134 F.3d at 1484. For if Gamco cannot sue on its own, who would be joined? Sierra is a "bare licensee" and thus is not a proper party. IGT holds absolutely no rights to practice or sub-license the '035 patent in the New York State Lottery, nor does it control Sierra's license or rights to practice in that territory. Thus, what would joinder of IGT bring to the case? Given that neither Sierra, nor IGT would be a fitting joinder, if Gamco alone does not have standing, then does no one have standing? If so, this would amount to an "absolute failure of justice."

Additionally, one function of the standing requirements is "preventing multiple lawsuits on the same patent against the same accused infringer." Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1343 (Fed. Cir. 2006). Allowing Gamco to proceed here does not expose Defendant Multimedia to this risk - IGT holds no rights to sue for acts of infringement in the New York State Lottery and thus Multimedia is in no danger of multiple litigations for the actions alleged in this suit.

1  finds that Gamco has standing to sue for infringement within the "exclusive enterprise" of
2  the New York State Lottery.

### 3. The "Retroactivity" of the Modification Agreement

4  Multimedia argues that even if this Court finds that Gamco has standing as of the
5  date of Supplemental and Second Amended Complaint, Gamco's standing would not
6  permit it to sue for infringement for acts prior to that date. Multimedia contends that the
7  Modification Agreement, if it provided Gamco with exclusive rights, could not confer such
8  rights "retroactively."

9  "The general rule is that one seeking to recover money damages for infringement of
10 a United States patent . . . must have held the legal title to the patent during the time of the
11 infringement." Arachnid, Inc. v. Merit Industries, Inc., 939 F.2d 1574, 1579 (Fed. Cir.
12 1991). A recognized exception, however, "is where the assignment of a patent is coupled
13 with an assignment of a right of action for past infringements," so long as the assignment of
14 those rights is express. Id. at 1579 n.7. Here, the Modification Agreement between Gamco
15 and IGT explicitly assigned to Gamco the right to sue for past infringement. Thus, Gamco
16 has the right to recover damages for infringement that date back to the effective date of that
17 assignment, February 10, 2003.

### 4. In the Alternative only, the Court Grants Leave to Amend

19 Should it be found that Gamco's standing is not sustainable, in the alternative only,
20 the Court grants Gamco leave to amend its Supplemental and Second Amended Complaint.

21 "In the area of patent infringement, . . . if the original plaintiff lacked Article III
22 initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by
23 the addition of a party with standing." Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402
24 F.3d 1198, 1203 (Fed. Cir. 2005). However, where an exclusive licensee lacks standing as
25 a sole plaintiff but would have standing as a co-plaintiff, this is an issue of prudential
26 standing. See id. at 1203 n.4 (citing Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240
27 F.3d 1016, 1018-19 (Fed.Cir.2001)). In such circumstances, the other party with the

1  necessary rights may be added.  Id. ; See also Abbott Labs. v.Diamedix Corp., 47 F.3d
2  1128, 1133 (Fed Cir. 1995) (where Abbott lacked standing to sue for patent infringement
3  on its own, joinder of licensor Diamedix was consistent with Rule 19); Intellectual Property
4  Dev. Inc. v. TCI Cablevision, 248 F.3d 1333, 1349 (Fed. Cir 2001) (examining and
5  rejecting the proposition that a standing defect cannot be cured by joinder).
6       Here, the Court has determined previously that Gamco is an "exclusive enterprise
7  licensee."  Hence, even if it lacked "all substantial rights" to sue as sole plaintiff, as an
8  exclusive licensee it would have standing to sue as a co-plaintiff.  Therefore, in the
9  alternative only, should it be necessary, the Court grants Gamco leave to amend its
10 Supplemental and Second Amended Complaint and join any necessary co-plaintiff(s) to the
11 action.

### 4. Request to Certify for Interlocutory Appeal

13      The issue of an "exclusive enterprise license"is presently pending before the U.S.
14 Court of Appeals for the Federal Circuit.  Multimedia has requested that the Court also
15 certify its decision regarding the standing issue herein for interlocutory appeal.  Since the
16 instant issue appears to be intimately related to the matter already pending before the
17 Federal Circuit, the Court believes that it is prudent to join the issue herein with the
18 pending interlocutory appeal.  Therefore, the Court **CERTIFIES** for interlocutory appeal,
19 pursuant to 28 U.S.C. § 1292(b), the question of whether a plaintiff holding an "exclusive
20 enterprise license" may be deemed an exclusive licensee with all substantial rights to confer
21 standing to bring a patent infringement action in its own name where another party holds a
22 prior-granted non-exclusive license to practice the invention, as described herein, and the
23 plaintiff is the licensor of that license.

### III. CONCLUSION

25      For the reasons discussed herein, the Court **DENIES** Multimedia's motion to
26 dismiss Gamco's Supplemental and Second Amended Complaint. In the alternative only, if
27 Gamco's standing is found to be unsustainable, the Court grants Gamco leave to amend its

1 | Supplemental and Second Amended Complaint. Additionally, the Court **CERTIFIES** for
2 | interlocutory appeal the question of whether a party holding an "exclusive enterprise
3 | license" may be deemed an exclusive licensee with all substantial rights to confer standing
4 | to bring a patent infringement action in its own name where another party holds a prior-
5 | granted non-exclusive license to practice the invention as described herein, and the plaintiff
6 | is the licensor of that license.

**IT IS SO ORDERED**

DATED: December 4, 2006

_____
Hon. Rudi M. Brewster
United States Senior District Judge

cc: Hon. Anthony J. Battaglia
    United States Magistrate Judge

    All Counsel of Record